Dear Mr. Jennings:
This office is in receipt of your request for an opinion of the Attorney General on various questions in regard to powers of the governing authority of the town. You indicate the Town of Wisner is a Lawrason Act community with a population of approximately 1300 with an elected Chief of Police. You ask the following:
 1. Can the governing authority tell the Chief of Police how to operate and run his department;
 2. Does the governing authority have any control over the police expenses, i.e. what to buy and how much;
 3. Can the governing authority determine what car and how many police cars the Police Department can operate;
 4. Can the governing authority change existing policemen's salaries, hours worked or the number of policemen on the force;
 5. What is the law concerning special meetings held by the councilmen and mayor; and
 6. Is there a law that prohibits elected officials owning businesses in town from buying or selling to the town.
In answer to your first four questions this office has often recognized the chief of police has the inherent authority to supervise and control his office, equipment and personnel. Accordingly, the governing authority cannot tell the Chief of Police how to operate his department. However, this is subject to restrictions under the statutory authority exercised by the governing authority. The Chief makes recommendations for hiring of his officers, but the authority to hire and fire rests solely with the mayor and councilmen, as does the for the budgeting for the police department. Atty. Gen. Op. No. 94-313.
In your second question you ask if the governing authority has any control over the police expenses, "what to buy and how much". The inherent authority of the chief of police to control the day to day operation of his department is subject to the requirement that expenditures only be made pursuant to or in accordance with specific appropriations from a budget approved by the governing authority, and from a budget which can be amended. However, in a detailed opinion, Atty. Gen. Op. No. 93-666, this office noted that the courts have stated the Chief of Police "is in the best position to determine whether or not his department needs police cars or roof repairs, radio equipment or parking lots." This office concluded, "In summary, and in answer to your first question, the Chief has the inherent authority to control police department funds on a day-to-day operational basis. This authority is subject to said funds being budgeted and appropriated pursuant to municipal ordinance."
Since the Chief of Police is in control of the day-to-day operation of the equipment of the department, the governing authority cannot tell the chief of police what car or how many he can operate except indirectly insofar as they control what is budgeted that may go toward this expense. However, this office stated in Atty. Gen. Op. No. 82-1165:
 Thus, it is our opinion that the chief of police has inherent authority to control city police vehicles. He has the authority to assign a police department vehicle to himself for police work but such police vehicle may not be used as a personal car by the chief of police unless this personal use has been authorized by the mayor and board of aldermen. However, because of their power to control and manage municipal property, it is also our opinion that the mayor and board of aldermen may specifically request that the village car be used by the chief of police only when he is working or conducting business relative to the municipal police department.
In response to your fourth question we would conclude in accordance with the authority conferred upon the Chief of Police that the governing authority cannot assign work hours for the police personnel. However, we find since the Chief of Police does not hire or fire the police officers but can only recommend an individual for hiring, the governing authority may control the number of police on the force. Also, by setting the budget or amending the budget it may result in the existing salaries of the police officers being changed by the action of the governing authority.
You inquire as to what is the law concerning special meetings being held by the mayor and councilmen. R.S. 33:405(C) in regard to special meetings of the mayor and board of aldermen provides as follows:
 C. Special meetings of the mayor and the board of aldermen may be called by the mayor or a majority of the members of the board. They shall establish by ordinance how notice of special meetings shall be provided to members of the board and the mayor. The notice for a special meeting shall specify the business to be considered at the special meeting. Public notice shall be given as provided in 42:7. No business, except that specified in the notice of the special meeting, shall be considered at the meeting unless approved by two thirds of the aldermen present at the meeting.
There are further provisions in regard to having meetings designated "extraordinary emergency", and the statute sets forth that a meeting, whether regular, special or emergency may be continued with a consent of the majority to another date.
Reference must be made to R.S. 33:385(C) in regard to your inquiry about a prohibition of town officials in a Lawrason Act community doing business with the town. Therein the pertinent part provides, "No member of the board of aldermen, or any other officer of the corporation, shall be directly or indirectly interested in any work, business, or contract the consideration of which is to be paid from the treasury of the municipality, nor be surety for any person having a contract, work, or business with the municipality, for the performance of which security made be required, nor the surety for any officer or employee." This statute prohibits officials of the town from doing any business to be paid from the public funds, and this office has found this extends to even minor transactions.
We hope this sufficiently answers your inquiries.
Sincerely yours,
 RICHARD P. IEYOUB Attorney General
 By: ___________________________ BARBARA B. RUTLEDGE Assistant Attorney General
BBR